UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CEDRIC EUGENE GREEN,

                            Plaintiff,

v.

R. SOLIS,

                          Defendant.

Case No.:  18cv1804-CAB (BLM)

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiff Cedric Eugene Green is a state prisoner proceeding pro se and in forma pauperis with a Second Amended Complaint ("SAC") pursuant to 42 U.S.C. § 1983. (ECF No. 19.)  He claims that while housed at the R. J. Donovan Correctional Facility ("RJD"), Defendant Correctional Officer R. Solis, in retaliation for Plaintiff's use of the inmate grievance system, falsely claimed Plaintiff tried to stab him with a ball point pen, which caused mental health officials to find him to be a danger to himself, which resulted in a ten-day placement in a more restrictive mental health care setting than otherwise required, where he was denied outdoor exercise, a therapeutic mental health care setting, hand soap, eating utensils, eyeglasses and some clothing.[1]  (*Id*. at 4-18.)

---

[1]  The SAC contains allegations against seven other RJD Correctional Officers who have been dismissed, leaving Defendant Solis the only remaining Defendant.

Currently pending is a Motion for Summary Judgment by Defendant Solis. (ECF No. 37.) Defendant contends there is no genuine issue of material fact in dispute whether Plaintiff exhausted his administrative remedies. (*Id.* at 3, citing *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (holding that defendant is entitled to summary judgment if the undisputed evidence, viewed in the light most favorable to plaintiff, shows plaintiff failed to exhaust available administrative remedies), citing 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted.") (emphasis added)).

Plaintiff opposes summary judgment. (ECF No. 51.) He contends he exhausted his administrative remedies by submitting appeals and letters to prison officials which placed them on constructive notice of his claim, although none contain the allegations in the SAC, and alternately argues those remedies were unavailable because his efforts to exhaust were thwarted by prison officials through intimidation and fear of retaliation. (*Id.* at 5-28.)

Defendant replies that the record contradicts Plaintiff's assertion he was thwarted from exhausting because: (1) he filed numerous inmate grievances before and after the acts alleged in the SAC, (2) his basis for intimidation, a brief interaction with a prison guard who is not a party to this action on an unrelated appeal, is insufficient, and (3) he was transferred from RJD within ten days of the alleged incident and had no basis to fear retaliation from use of the grievance system. (ECF No. 52 at 2-3.)

As set forth herein, the record shows Plaintiff filed numerous administrative appeals but did not exhaust his administrative remedies, and there is no support for his contention he had an objective fear of retaliation which rendered those remedies unavailable. The Court therefore **GRANTS** summary judgment in favor of Defendant Solis.[2]

---

[2] Although this motion was referred to United States Magistrate Judge Barbara L. Major pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither a Report and Recommendation nor oral argument is necessary for the disposition of this matter. *See* S.D. Cal. Civ.L.R. 72.1(d).

## I. Procedural Background

Plaintiff initiated this action by filing a Complaint on August 2, 2018, naming as Defendants four RJD Correctional Officers, including Defendant Solis, and two RJD medical employees. (ECF No. 1.) On October 3, 2019, the Court granted Plaintiff leave to proceed in forma pauperis but dismissed the Complaint because his allegations were duplicative of a pending civil rights action in this Court, *Green v. Thiessen, et al*., S. D. Cal. Civil Case No. 17cv1156-JAH (RBM), referred to by Plaintiff here and in this Order as *Green I*. (ECF No. 6.) Plaintiff filed a First Amended Complaint on November 28, 2018 naming the same Defendants but asserting he was presenting different claims than in *Green I*. (ECF No. 13.) In an Order filed January 4, 2019, the Court accepted Plaintiff's contention his claims were not duplicative of *Green I*, but dismissed the First Amended Complaint for failure to state a claim. (ECF No. 14 at 5-9.) Plaintiff filed a Second Amended Complaint, the operative pleading in this action, on March 4, 2019, naming the same Defendants plus two additional RJD Correctional Officers. (ECF No. 19.)

On April 9, 2019, the Court dismissed all claims against all Defendants except Plaintiff's retaliation claim against Defendant Solis. (ECF No. 20.) Plaintiff's motion to file a Third Amended Complaint was denied on May 24, 2019. (ECF Nos. 23-24.) His motion to alter or amend the order denying leave to amend was denied on July 5, 2019, and his appeal of the July 5, 2019 order was dismissed for lack of jurisdiction by the Ninth Circuit Court of Appeals on August 29, 2019. (ECF Nos. 28, 32-36, 46.)

Defendant Solis filed the instant Motion for Summary Judgment on August 5, 2019. (ECF No. 37.) Plaintiff filed an Opposition on October 31, 2019. (ECF No. 51.) Defendant filed a Reply on November 27, 2019. (ECF No. 52.)

## II. Legal Standards

Defendant is entitled to summary judgment if he demonstrates "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of "showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157

(1970). Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

In order to avoid summary judgment, the nonmovant must present "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The Court may not weigh evidence or make credibility determinations, and any inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Id*. at 255. The nonmovant's evidence need only be such that a "jury might return a verdict in his favor." *Id*. at 257.

"The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 578 U.S. ___, ___, 136 S. Ct. 1850, 1854-55 (2016), quoting 42 U.S.C. § 1997e(a). The "exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims." *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010); *see also Jones v. Bock*, 549 U.S. 199, 204 (2007) (noting that the exhaustion requirement is based on an important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."); *Woodford v. Ngo*, 548 U.S. 81, 93-95 (2006) (holding that exhaustion often creates "an administrative record that is helpful to the court.")

Inmates "are obligated to navigate all of a prison's administrative review process 'regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible.'" *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005), quoting *Booth v. Churner*, 532 U.S. 731, 739-41 (2001). Inmates are not required to exhaust administrative remedies when circumstances render administrative remedies "effectively unavailable." *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010); *see also Ross*, 136 S.Ct. at 1862 ("The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'")

There are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross*, 136 S. Ct. at 1859. Those circumstances arise when: (1) the exhaustion procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the prison's exhaustion scheme is "so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60 (citations omitted). To render the grievance procedure unavailable by "a threat of retaliatory action by a prison guard," a plaintiff must show both an objective and subjective basis for a fear of retaliation. *McBride v. Lopez*, 807 F.3d 982, 984 (9th Cir. 2015).

When seeking summary judgment based on a failure to exhaust, the defendant must prove there was an administrative remedy available to plaintiff which he did not exhaust. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). If defendant does so, the burden shifts to plaintiff to come forward with evidence showing "there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*.

## III. Arguments and evidence in support and opposition to summary judgment

### 1. Defendant's Motion for Summary Judgment

Defendant presents the declaration of E. Frijas, the Appeals Coordinator at RJD, stating that since January 28, 2011 there have been three formal levels of administrative review in the California Department of Corrections and Rehabilitation ("CDCR"). (ECF No. 37-2 at 2, citing CAL. CODE REGS., tit. 15 § 3084.5.) An inmate begins the process by submitting, within thirty days of the adverse action of which he or she complains, a CDCR form 602 inmate appeal describing the adverse action challenged. (*Id*., citing CAL. CODE REGS., tit. 15 § 3084.8(b)(1).) The first level is addressed by the First Level Reviewer unless it is screened out for reasons such as a failure to meet time constraints or to include supporting documents, which will be accompanied by instructions on how to cure those

deficiencies, or unless it is bypassed by the appeals coordinator for the reasons outlined in CAL. CODE REGS., tit. 15 § 3084.7.  (*Id*. at 1-2.)  If the inmate is not satisfied with the first level response, he or she may submit an appeal at the second level of review.  (*Id*. at 1.)  If the inmate is not satisfied with the second level response, he or she may submit an appeal to the Office of Appeals for a third level of review by the Chief of the Office of Appeals in Sacramento, which completes the exhaustion process.  (*Id*.)

E. Frijas states that inmate grievances are assigned a tracking number known as a log number and entered into a computer tracking system designated the Inmate/Parolee Appeals Tracking System-Level I&II, which tracks all inmate grievances received by the Office of the Appeals Coordinator at RJD.  (*Id*. at 2.)  The Office of the Attorney General of California requested the Office of the Appeals Coordinator at RJD search its records and files to ascertain whether Plaintiff submitted an inmate appeal related to an incident on August 15, 2016 with allegations that RJD Correctional Officer R. Solis, acting in retaliation for Plaintiff filing a staff complaint against him, falsely claimed Plaintiff tried to stab him.  (*Id*. at 3.)  A search of the records and computer database conducted by E. Frijas in response to that request revealed that the Office of the Appeals Coordinator at RJD received the following three inmate appeals from Plaintiff:

1.   A 602 Inmate Appeal Log No. RJD-17-00866 submitted by Plaintiff on December 15, 2016, complaining he was found guilty of battery on a peace officer in Rules Violation Report ("RVR") Log No. 761324 relating to an August 15, 2016 incident.  (*Id*. at 4.)  A copy is attached to the Frijas declaration as Exhibit A.  (*Id*. at 8-11.)  That guilty finding was a result of a 2:55 p.m. incident on August 15, 2016, described as follows:

> The appellant [Plaintiff] entered the C EOP building and walked past the check-in officer without consenting to search.  The appellant had to be placed in a holding cell because he began to resist staff.  After being placed in the holding cell the appellant began to expressing [sic] suicidal ideations and was admitted to CTC Mental Health Crises Bed.  The appellant then battered Officer Rios while he was taking the appellant [sic] glasses off.

(*Id*. at 13.)

That 2:55 p.m. incident occurred several hours after the 11:30 a.m. incident upon which the allegations of the SAC are based, where Defendant Solis stopped Plaintiff immediately after he had walked past the check-in officer without being searched and Plaintiff attempted to stab him with a ball point pen as he was being handcuffed.  (*Id*. at 48-49.)  Plaintiff was never charged with attempting to stab Defendant Solis, and he alleges in the SAC it was his refusal to cooperate with the investigation into Defendant Solis' false and retaliatory allegation that led to him be classified as a danger to himself and placed in a more restrictive mental health care setting than he would have been but for Defendant Solis' false allegation.  (ECF No. 19 at 4-10.)

In 602 Inmate Appeal Log No. RJD-17-00866 Plaintiff challenged the guilty finding of battery on Officer Rios by arguing: (1) the 2:55 p.m. incident report was "mixed with narratives of a separate unrelated incident" (which as discussed below may be a reference to the 11:30 a.m. incident with Defendant Solis), (2) Plaintiff was not provided an unbiased opportunity to defend himself at the hearing, (3) the hearing officer referred to other incidents where handcuffed inmates were found guilty of battering an officer, and (4) the RVR did not describe how he battered Officer Rios.  (ECF No. 37-2 at 8, 10, 12.)  It does not contain allegations of retaliation by Defendant Solis or anyone else.  (*Id*.)  It was bypassed at the first level of review, and rejected by the Warden of RJD at the second level on November 15, 2017, on the basis there was no evidence to support the unfounded and non-credible allegations.  (*Id*. at 12-14.)  It was rejected at the third level of review on February 9, 2018 on the basis it was missing supporting documentation.  (*Id*. at 65.)

2.  A 602 Inmate Appeal Log No. RJD-17-05938 submitted by Plaintiff on September 29, 2017 regarding the cancellation of 602 Inmate Appeal Log No. RJD-17-00866.  (*Id*. at 4.)  A copy is attached to the Frijas declaration as Exhibit B.  (*Id*. at 78-81.)  It was screened out at the first level of review on the basis that 602 Inmate Appeal Log No. RJD-17-00866 had not been cancelled but had been incorrectly documented as withdrawn and the error had been corrected.  (*Id*. at 4, 79.)  It does not contain allegations of retaliation by Defendant Solis or anyone else.  (*Id*. at 78-81.)

7

3. 602 Inmate Appeal Log No. RJD-16-03530 submitted by Plaintiff on August 14, 2016, attached to the Frijas declaration as Exhibit C, complaining that on July 14, 2016, Correctional Officers Lucero and Beltran entered his cell "with the intent to intimidate using threats of violence and corruption." (*Id*. at 5, 87-90.)  It involves an incident which predates the August 15, 2016 incident upon which the allegations in the Second Amended Complaint are based and involves the incident upon which *Green I*. is based.  (*See* ECF No. 8 at 7.)  It was partially granted at the second level of review in that additional witnesses were interviewed at Plaintiff's request, but ultimately denied at that level on the basis no staff misconduct occurred.  (ECF No. 37-2 at 91-92.)  It was dismissed as incomplete at the third level of review.  (*Id*. at 94.)

E. Frijas declares that no other inmate appeals from Plaintiff were received, processed, rejected or canceled relating to an August 15, 2016 incident at RJD.  (*Id*. at 5.) Attached as Exhibit D to the Frijas declaration is a printout of the Inmate/Parolee Appeals Tracking System Level I&II for Plaintiff.  (*Id*. at 98.)  It shows a total of twelve inmate appeals filed by Plaintiff, including the three just identified (00866, 05938 and 03530), three which are attached to Plaintiff's Opposition and discussed below (03029, 04433 and 01992), and six others (00197, 03081, 03730, 03961, 06518 and 00457), but not including the health care appeal discussed next.  (*Id*.)

Defendant presents a declaration from S. Gates, the Chief of the Health Care Correspondence and Appeals Branch ("HCCAB") of the Policy and Risk Management Services division of California Correctional Health Care Services ("CCHCS").  (ECF No. 37-3.)  The HCCAB is the part of the CCHCS which provides oversight of inmate grievances relating to medical, dental and mental health care for adult CDCR inmates.  (*Id*. at 1.)  All such inmate appeals are tracked though the Health Care Appeals and Risk Tracking System ("HCARTS"), a review of which shows only one appeal related to an incident on August 15, 2016: a September 15, 2016, inmate appeal assigned Inmate Health Care Appeal Log No. DSH-SVSP-HC-16000066 challenging Dr. Moayedi's opinion that no mental health symptoms contributed or influenced Plaintiff's behavior that resulted in

the charge of battery against Correctional Officer Rios in RVR Log No. 761324. (*Id.* at 2-3.) That appeal is attached to the Gates declaration as Exhibit B. (*Id.* at 15-18.) Plaintiff claims in the SAC he spent ten days in a more restrictive mental health care setting because he was declared a danger to himself on August 15, 2016 as a direct result of Defendant Solis' false and retaliatory allegation he attempted to stab him with a ball point pen. Although he complains in Health Care Appeal Log No. DSH-SVSP-HC-16000066 he should not have been declared a danger to himself on August 15, 2016, there is no mention of Defendant Solis or any allegation similar to those in the SAC. (*Id.*)

Finally, Defendant presents a declaration from J. Spaich the Acting Chief of the Office of Appeals ("OOA") for the CDCR. (ECF No. 37-4.) He states that the OOC receives, reviews and maintains all non-healthcare inmate grievances submitted for third level review, and was asked by the office of the California Attorney General to search the OOC's records for inmate appeals filed by Plaintiff relating to an August 15, 2016 incident at RJD with allegations of false charges of battery on a peace officer after allegedly trying to stab Defendant Solis with a ball point pen made in retaliation against Plaintiff for filing a staff complaint. (*Id.* at 2-3.) Spaich states that no such inmate appeals were discovered, but identifies three inmate appeals (02598, 01998 and 03275) filed by Plaintiff in addition to the twelve identified by E. Frijas and the one medical appeal. (*Id.* at 3-4, 7.)

Accordingly, Defendant has presented evidence that the inmate appeals system was available to Plaintiff and he used it to file sixteen inmate appeals, two involving the incidents of August 15, 2016, but none including the allegations in the SAC.

## 2. Plaintiff's Opposition

Plaintiff has filed an Opposition in which he fails to identify any inmate grievance containing the allegations in the SAC but argues his efforts to file one were thwarted by prison officials through harassment, intimidation and retaliation, and those he did file placed the CDCR on notice he was being retaliated against for filing inmate appeals. (ECF No. 51 at 5-28.) He attaches his declaration to his Opposition. (*Id.* at 29-37.) The SAC and his declaration in opposition to summary judgment are both signed under penalty of

perjury. (*Id*. at 37; ECF No. 19 at 18.) To the extent the allegations contained in the SAC and his declaration are within his personal knowledge, they are treated as affidavits in opposition to the summary judgment motion. *Schroeder v. McDonald*, 55 F.3d 454, 460 & nn. 10-11 (9th Cir. 1995); *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) ("[B]ecause Jones is pro se, we must consider as evidence in his opposition to summary judgment all of Jones's contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where Jones attested under penalty of perjury that the contents of the motions or pleadings are true and correct.")

Plaintiff states in his declaration that on July 28, 2016, he participated in an on-camera interview as part of the investigation into his 602 Inmate Appeal Log No. RJD-16-03029 involving events surrounding a suicide attempt which he states is the subject of *Green I*. (ECF No. 51 at 30.) That inmate appeal is attached as Exhibit A to his declaration and alleges that on June 24, 2016, Officer Leon opened his cell door and threw him to the floor, Officer Perez then slammed his head on the floor, and all the "HCA Officers" working that day piled on. (*Id*. at 38-41.) He states that just after the conclusion of the interview, as he was reentering his housing unit, he was confronted by Correctional Officer Perez about that inmate grievance, and that during that confrontation he felt fearful, pressured, intimidated and discomforted. (*Id*. at 30-31.) He presents as Exhibit C to his declaration a statement signed by Officer Perez dated July 28, 2016, which states:

> While performing my duties as Charlie EOP Escort #5, I/M Green crossed my path as the inmates were being escorted to their assigned housing units. I then asked I/M Green why he had made false allegations in the 602 report he had filed about me. I/M Green then smiled as stated, "I had to say somebody's name." I then asked Green why he would would [sic] say something like that about someone that wasn't true. I/M. Green then laughed and stated, "Thats [sic] just how it is." I/M Green then walked away towards the main EOP building #1. That then ended my conversation with I/M Green.

(*Id*. at 44.)

/ / /

Plaintiff states that on that same day, July 28, 2016, he submitted a staff complaint to Correctional Officer Briones "regarding, in part, the deliberate indifference to a serious medical need involving, in part, defendant Solis." (*Id*. at 31.) He handed it to Correctional Officer Briones because the typical method of submitting an inmate appeal, placing it in a secure drop box, was unavailable because the drop box was damaged. (*Id*.) The staff complaint he handed to Officer Briones was in an institutional mail envelope addressed to the Warden of RJD but was never received by the Warden. (*Id*. at 32.) He created a receipt and proof of service for that document (*id*.), a copy of which is attached to his declaration as Exhibit E. (*Id*. at 46.)

Plaintiff states that the allegation of deliberate indifference to his serious medical needs in his 602 Inmate Appeal Log No. RJD-16-03029 which forms the basis of *Green I*., was "part of an ongoing campaign of harassment against me because of my use of the appeals system," and he requested in that appeal the harassment stop. (*Id*. at 33.) He alleges it was about a month later, on August 15, 2016, when Defendant Solis made the false allegation Plaintiff attempted to stab him with a ball point pen "as retaliation for my use of the appeals system." (*Id*.)

Plaintiff submits a copy of a September 26, 2015 602 Inmate Appeal Log No. RJD-16-04433 in which he complained he had sent two staff complaints to the Warden via confidential mail but had "yet to receive any notices of appeals, appeal log numbers, interviews pertaining to the issues being appealed or any overall confirmation of acknowledgment that the appeals ever made it to their intended destinations." (*Id*. at 47-50.) There is no mention of Defendant Solis in that inmate appeal and Plaintiff identified the missing staff complaints as describing "threats by staff, inhumane treatment/conditions while at RJD-CTC on 7-14-16, submitted 8-14-16; and the other appeal describes a refusal of access to health care which resulted in a suicide attempt by petitioner on 7-14-16, submitted on 7-31-14 [sic]." (*Id*.) He states that the experience of the two missing staff complaints "demonstrated to me further that RJD Facility C prison officials were going to impose upon me adverse conditions because of my use of the appeals process." (*Id*. at 46.)

602 Inmate Appeal Log No. RJD-16-04433 complaining they went missing was screened out at the first level of review on the basis that both staff complaints had been received and assigned 602 Inmate Appeal Log No. RJD-16-03029 and 602 Inmate Appeal Log No. RJD-16-03530, and they were both completed and mailed to Plaintiff on October 14, 2016. (*Id.* at 51.) Plaintiff replied that those were not the two missing staff complaints (*id.*), but as set forth above they involved events prior to the August 15, 2016 incident with Defendant Solis upon which the allegations in the SAC are based. He states in his declaration that:

> After being confronted by HCA Officer H. Perez about my use of the appeals system; the obstruction of the staff complaint naming Defendant R. Solis mailed to RJD Warden Paramo; being falsely alleged of "battery on a peace officer" by Defendant HCA Officer R. Solis, I was in fear that retaliation equal to or greater than what had already occurred would befall me at the hands of Facility C Correctional Officers, the custodians of my welfare, if I named any Facility C Correctional Officers in an appeal captioned as a staff complaint. Accordingly, I put prison officials on notice about the ongoing campaign of harassment and retaliation against me while having to omit names, titles, and details because of fear of retaliation from correctional officers involved.

(*Id.* at 33.)

Plaintiff attaches as Exhibit G to his declaration 602 Inmate Appeal Log No. RJD-17-00866, submitted on December 16, 2016, in which he requested the August 15, 2016 RVR charging him with battery on Correctional Officer Rios be dismissed because: (1) the 2:55 p.m. incident report was "mixed with narratives of a separate unrelated incident," (2) Plaintiff was not provided an unbiased opportunity to defend himself at the hearing, (3) the hearing officer referred to other incidents where handcuffed inmates were found guilty of battering an officer, and (4) the RVR did not describe how he battered Officer Rios. (Id. at 53-63.) In the section in which he is asked to explain why he is dissatisfied with the second level review, he wrote:

> During the SLR via telephone, Sgt. Beitinger described only the incident of RVR Log #761324 and asked if petitioner had any further input. Petitioner clearly stated that he did not recall appealing the actual incident which led up to the RVR, as presented by Sgt. Beitinger, but was appealing the errors in the 837 Crime/Incident Report which was instrumental in finding

petitioner guilty of the charge.  At no point before the interview, during the interview or after the interview did petitioner agree to or request that appeal #RJD-X-17-0866 be withdrawn.  Petitioner still wishes that appeal #RJD-X-17-0866 be persued [sic]; that the 128-B be removed from petitioner's central file; and that RVR #761324 be dismissed in the interest of justice.  The finding of guilt in RVR #761324 is invalid.  I was never provided a copy of the CDCR 837 to prepare an adequate defense, because there is no incident report for RVR #761324.  CDCR 837 #RJD-CYD-16-08-0411 is assigned to the mandatory reportable incident requiring the use of force at 11:30, which alleges battery on a peace officer using an ink pen, which was collected, photographed and processed as evidence.  The primary and responding staff of the 11:30 incident concluded their narratives with the deliberate and distinct words "without incident," bringing the 11:30 incident to an official end.  3 hours and 25 minutes later at 14:55, at a second location, the incident requiring the use of force, therefore mandates reporting through CDCR 837, occurred.  Any incident requiring the use of force after 11:30 (#RJD-CYD-16-08-0411) requires its own separate CDCR 837.  According to CDCR 837 #RJD-CYD-16-08-0411, Officer Rios was battered at 11:30, 2 and a half hours before arriving at work on his shift that began at 1400.  In the matter of RVR #761324, due process was violated because I wasn't provided a copy of the CDCR 837 because RVR #761324 does not have a CDCR 837.  This RVR must be dismissed.

(*Id.* at 54, 56.)

The Crime/Incident Report written by Defendant Solis regarding the 11:30 a.m. stabbing incident and the Crime/Incident Report written by Correctional Officer Beltran regarding the 2:55 p.m. incident where Plaintiff battered Officer Rios, although separate, are both designated CDCR 837-C Crime/Incident Report Log #RJD-CYD-16-08-0411. (ECF No. 37-2 at 48-49, 56.)  In fact, the record contains nine CDCR 837-C Crime/Incident Reports assigned Log #RJD-CYD-16-08-0411 written by nine different RJD Correctional Officers involving the events of August 15, 2016.  (*Id.* at 48-64.)  As just quoted, Plaintiff referred to Officer Rios as being battered at 11:30 a.m. rather than Defendant Solis, and he appears to have confused the 11:30 incident with Defendant Solis with the 2:55 p.m. incident with Officer Rios.  In any case there are no allegations of retaliatory motive or any mention by name of Defendant Solis in 602 Inmate Appeal Log No. RJD-17-00866 challenging the RVR finding of guilty of battery on Officer Rios.  That inmate appeal was

denied at the second level of appeal on the basis the "allegations were non-credible and unfounded," and denied at the third level of review on the basis Plaintiff was provided a fair hearing and the preponderance of the evidence supports the guilty finding of battery on a peace officer. (ECF No. 51 at 61-63.) Despite the fact that he named Correctional Officers Beitinger and Rios by name in that inmate appeal and identified Defendant Solis by reference to the stabbing incident, and despite the fact (as set forth in Defendant's Reply below) that he was no longer housed at RJD when he submitted that inmate appeal, Plaintiff states that when he submitted it he was "still in fear of retaliation by Facility C Correctional Officers" if he referred to them by name in any inmate appeal. (*Id*. at 33-34.)

Plaintiff submits as Exhibit J to his declaration a copy of a mental health care inmate appeal DSH-SVSP Log No. 16-000066, submitted on September 13, 2016, complaining that Dr. Moayedi omitted in the report of his mental health examination of Plaintiff following the August 15, 2016 incident that Plaintiff had been declared incompetent by other doctors on the day of the incident. (*Id*. at 93-96.) Although he states in his declaration that he was still in fear of retaliation by RJD staff when he submitted that appeal (*id*. at 34), he was no longer housed at RJD and once again identified RJD staff by name, including Correctional Officers Gonzalez and Armstrong, Doctors Moayedi and Beyer, and Clinician Clayton. (*Id*. at 93-96.) That appeal was denied at the second and third levels of review on the basis that after further consultation with the Senior Psychiatrist it was determined that Plaintiff's "behavior was not strongly influenced by symptoms of a mental illness, developmental disability, cognitive, or adaptive functioning defects." (*Id*. at 100-02.) That appeal, like 602 Inmate Appeal Log No. RJD-17-00866 challenging the RVR finding of battery on Officer Rios, made a passing reference to allegations similar to those contained in the SAC, that he was improperly found to be a danger to himself based on "an incident that threatened the safety of another," presumably a reference to one or both of the August 15, 2016 incidents. (*Id*. at 96.) As set forth above, there is no mention of Defendant Solis or retaliatory motive in either of those inmate appeals.

///

Plaintiff attaches as Exhibit M to his declaration a September 29, 2017 602 Inmate Appeal Log No. RJD-17-05938 complaining that Sergeant Beitinger canceled his 602 Inmate Appeal Log No. RJD-17-00866 because Plaintiff requested it be cancelled, arguing he never requested it be cancelled.  (*Id*. at 115-19.)  Although as set forth above 602 Inmate Appeal Log No. RJD-17-00866 was denied at the third level of review on the basis he was not denied due process in the RVR hearing regarding the August 15, 2016 incident, he complained in 602 Inmate Appeal Log No. RJD-17-05938 that the third level review of 602 Inmate Appeal Log No. RJD-17-00866 was rejected on the basis that he had bypassed the lower levels of review.  (*Id*.)  602 Inmate Appeal Log No. RJD-17-05938, in which Plaintiff once again named an RJD Correctional Officer by name was bypassed at the first level of review and granted at the second level review on the basis that 602 Inmate Appeal Log No. RJD-17-00866 had been accepted.  (*Id*. at 115-16, 119.)

Finally, Plaintiff attaches as Exhibit R to his declaration a copy of a March 14, 2017, 602 Inmate Appeal Log No. RJD-17-01992 complaining that his 602 Inmate Appeal Log No. RJD-16-04433 in which he challenged a health care decision which led to his July 15, 2016 suicide attempt had been wrongfully cancelled and returned to him on March 6, 2017.  (*Id*. at 137-40.)  602 Inmate Appeal Log No. RJD-16-04433 was submitted on October 6, 2016 and screened out on the basis it was not an appeal.  (*Id*. at 142.)  602 Inmate Appeal Log No. RJD-17-01992 was denied at the second level of appeal on the basis that 602 Inmate Appeal Log No. RJD-16-04433 had been appropriately cancelled because it was an inquiry into the processing of two items, a 602 Inmate Appeal Log No. RJD-17-03530 which was denied at the third level of appeal, and a medical appeal of which there was no record.  (*Id*. at 141-43.)  It was denied at the third level of appeal on the basis that 602 Inmate Appeal Log No. RJD-16-04433 had been properly cancelled because it complained of mishandling of 602 Inmate Appeal Log No. RJD-17-03530 which was properly handled, and because it complained of a disappearance of a medical appeal which had been properly rejected for failing to follow staff instructions in using the proper form.  (*Id*. at 144-45.)  Although Plaintiff argues that 602 Inmate Appeal Log Nos. RJD-16-04433 and RJD-17-

5938 placed the CDCR on constructive notice of Defendant Solis' retaliatory conduct (*id.* at 13, 25-26), as just shown, neither of those appeals mentioned or involved allegations of retaliation by Defendant Solis or that he falsely alleged Plaintiff tried to stab him.

Accordingly, Plaintiff has not shown he filed an inmate appeal which included the allegations in the SAC against Defendant Solis, but argues he feared retaliation by RJD staff if he did so or named them in any inmate appeals, despite the fact he continued filing inmate appeals naming RJD staff. He contends his claim of fear is reasonable and is based on Defendant Solis's false and retaliatory allegation that Plaintiff attempting to stab him, and because he felt harassed and intimidated by his encounter with Officer Perez and when his inmate appeals either went missing or were improperly screened out. He alternately argues that the inmate appeals he did file placed the CDCR on constructive notice he was being retaliated against by RJD staff for use of the inmate appeal process.

### 3. **Defendant's Reply**

Defendant presents the declaration of H. Cervantez, the Litigation Coordinator at the California Men's Colony ("CMC") in San Luis Obispo, California, who states that Plaintiff was transferred from RJD to CMC on August 24, 2016 and has not been housed at RJD since. (ECF No. 52-1 at 2.)

Defendant argues he has satisfied his initial burden of showing a comprehensive appeal process was available to Plaintiff which he did not use to challenge Defendant's alleged retaliatory behavior, and the burden has shifted to Plaintiff to show no genuine issue of material fact exists as to his failure to exhaust. (ECF No. 52 at 3.) He argues that Plaintiff's contention he was thwarted from exhausting by retaliation or intimidation fails because the three events he relies on: (1) his discussion with Officer Perez, (2) the loss of the inmate appeals sent directly to the Warden, and (3) Defendant Solis' alleged retaliation itself, do not establish a subjectively or objectively reasonable fear of retaliation, particularly in light of his continued use of the appeal system, and his transfer from RJD to CMC ten days after his encounter with Defendant Solis where he could not have had an objective fear of retaliation by RJD Correctional Officers. (*Id.* at 4-11.)

## IV. Defendant is Entitled to Summary Judgment

When seeking summary judgment based on failure to exhaust, defendant must prove an administrative remedy was available to plaintiff which he did not exhaust. *Williams*, 775 F.3d at 1191. If defendant does so, the burden shifts to plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*.

Plaintiff can show that inmate grievance procedure was unavailable where he was thwarted from utilizing it based on "a threat of retaliatory action by a prison guard." *McBride*, 807 F.3d at 984. He must show both an objective and subjective basis for his stated fear of retaliation in order to render the grievance procedure unavailable. *Id*.

### 1. Defendant has carried his burden of showing an absence of a genuine issue of material fact in dispute

As detailed above, Defendant has shown that inmates at RJD had access to an inmate grievance procedure available to Plaintiff to complain that Defendant Solis made a false and retaliatory allegation that Plaintiff attempted to stab him with a ball point pen. Defendant has identified sixteen inmate appeals filed by Plaintiff including one medical appeal, none of which mention Defendant Solis or include allegations he retaliated against Plaintiff by falsely charging him with attempting to stab him.

The record shows that on August 15, 2016, Defendant Solis filed Crime/Incident Report Log # 16-08-0411 regarding battery on a peace officer. (ECF No. 37-2 at 48-49.) Defendant Solis's narrative states:

> On Monday August 15, 2016 at approximately 1130 hours while performing by job description as C Yard HDC C Clinic EOP Officer #2, I was conducting clothed body search of inmates entering C EOP Building #1, #2 and #3. I observed Inmate Green, C. F38011, 14-119L, bypass the clothed body search line and walking hurriedly towards EOP Building #3 in an attempt to avoid being searched for weapons or contraband. I called out to Green to stop his movement and return to the clothed body search line to be searched. He acted like he didn't hear me and kept walking towards EOP Building #3. He did hear me because he turned and looked at me but kept walking towards EOP Building #3. I ordered him to stop a second time again he turned and looked

at me and kept walking towards EOP Building #3 refusing to be searched for any weapons or contraband. Appearing that he didn't want to be searched because he had concealed weapons or contraband on his body I notified C Yard Observation via my state issued radio to put the yard down we have a non-complying and disruptive inmate. Observation ordered all C Yard inmates out on the yard to get down. Green was the only inmate not complying with those orders. I ordered Green to turn around and face away from me so I could place him in handcuffs. Green complied. This was done for safety reasons in case he had any weapons on him. As I applied the right handcuff on his right wrist Green tried to break loose of the hold I had on his right wrist by lifting his right arm in an upward motion towards his right shoulder. As I brought his right arm down with my right hand I grabbed his left hand with my left hand in an attempt to bring it down to the left side of his body to apply the left handcuff. He stiffened up his left arm so I would struggle bringing it down to his left side. As he was being resistive to bringing his left arm down he took two steps forward in an attempt to free himself from my hold. He walked into the fence separating C Yard Recreational Yard and C Yard Broadway Roadway thus stopping his movement. I was then able to lower is left arm down to the left side of his body to apply the left handcuff on his left wrist. As I was applying the handcuff on his left wrist I looked down and saw Green trying to stab my right hand with a ball point pen he was holding it [sic] in his right hand. He must have retrieved the pen from his right side rear pant pocket because he didn't have a pen in his right hand when I applied the right handcuff on it. I was able to remove the pen from his right hand by pulling it away from his hold with my right hand. I then conducted a clothed body search for any additional weapons or contraband with negative results. To secure the area and avoid further disruption of program I escorted Green without incident to C EOP Building #1 to be placed in holding tank for evaluation. I released custody of Green to Correctional C Clinic EOP Officer #1 M. Lopez. I reported to central control where I took two photographs of the weapon and secured the evidence in Central Control Evidence Locker #1. This concludes my involvement in this incident.

(*Id.*)

Although Plaintiff was never charged with battery on Defendant Solis, he alleges in the SAC that the allegations in that Crime/Incident Report are false and it was filed by Defendant Solis in retaliation for Plaintiff filing a July 28, 2016 inmate appeal. (ECF No. 19 at 4.) He also claims in the SAC that Defendant Solis was one of the officers who was involved in the incident upon which the July 28, 2016 inmate appeal was based. (*Id.*) The

record does not contain a July 28, 2016 inmate appeal or any evidence one was submitted that day. Plaintiff states in the SAC that: "This civil action does not concern the separate incidents which spawned the July 28, 2016 appeal submission, but focuses on the incidents which occurred after the July 28, 2016 appeal submission, because of, in part, the July 28, 2016 appeal submission." (*Id*.) Setting aside the fact that the record contains no evidence of a July 28, 2016 inmate appeal, and assuming it was one of the two staff complaints Plaintiff contends went missing, he acknowledges the missing appeal did not involve the events in the SAC. He does not dispute he failed to file an inmate appeal alleging that Defendant Solis fabricated the charges in the Crime/Incident Report of August 15, 2016 and did so in retaliation for his use of the inmate appeal system. Rather, he contends he was thwarted from doing so by harassment and fear of retaliation, and that he placed the CDCR on constructive notice of Defendant Solis' retaliatory behavior.

Defendant points out that Plaintiff was not thwarted or intimidated from filing inmate grievances on July 16, July 31 and August 14, 2016, in which he named specific Correctional Officers, or from filing an inmate appeal on December 16, 2016, challenging the fairness of the RVR disciplinary hearing at which he was found guilty of battery on Correctional Officer Rios arising from the 2:55 p.m. incident on August 15, 2016. That inmate appeal includes no allegations that Defendant Solis acted in retaliation when he allegedly fabricated the charges regarding the 11:30 a.m. incident that day, even though Plaintiff complained the RVR was "mixed with narratives of a separate unrelated incident" which may be a reference to the 11:30 a.m. incident with Defendant Solis. (ECF No. 37-2 at 8, 11-12.) Of course, because the allegation he attempted to stab Defendant Solis was not part of the RVR charging Plaintiff with battery on Officer Rios, it is understandable that no allegations against Defendant Solis were included in that inmate appeal, despite the fact Plaintiff appeared to confuse the two incidents. Nevertheless, the record contains evidence Plaintiff filed sixteen inmate appeals, five of which were filed after his transfer from RJD on August 24, 2016, nine days after Defendant Solis allegedly retaliated against him by falsely claiming he had attempted to stab him, none of which contain allegations

against Defendant Solis or of retaliation. One of those, Health Care Appeal Log No. DSH-SVSP-HC-16000066, complains, as Plaintiff does in the SAC, that he should not have been declared a danger to himself and placed in a more restrictive mental health care setting. (ECF No. 37-3 at 15-18.) But it does not include the allegations in the SAC that he was declared a danger to himself and placed in a more restrictive health care setting as a direct result of Defendant Solis's August 15, 2016 false and retaliatory allegation that Plaintiff tried to stab him. (*Id*.)

Defendant Solis has satisfied his initial burden of showing "the absence of a genuine issue as to any material fact" by showing there was an administrative remedy available to plaintiff which he did not exhaust. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Williams*, 775 F.3d at 1191.

## 2. Plaintiff has not carried his burden of identifying specific facts showing a genuine issue of material fact for trial

Plaintiff must now come forward with "specific facts showing that there is a genuine issue for trial" in order to avoid summary judgment. *Anderson*, 477 U.S. at 256. He must make "a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. The Court may not weigh evidence or make credibility determinations, and any inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

Plaintiff states in his sworn declaration in opposition to summary judgment that, despite the three inmate grievances he filed before the August 15, 2016 incident with Defendant Solis, and the six inmate appeals filed afterward, all of which are detailed above, he was intimidated by fear of retaliation from filing an inmate grievance alleging Defendant Solis retaliated against him for his utilization of the inmate grievance system by falsely claiming he tried to stab him. Plaintiff first relies on his July 28, 2016 encounter with Officer Perez as evidence of intimidation, where Officer Perez asked why he had made false allegations against him in his July 16, 2016 602 Inmate Appeal Log No. RJD-16-3029 complaining that Officers Leon and Perez used excessive force following his June 24, 2016

suicide attempt. (ECF No. 51 at 30, 38-41.) Plaintiff states that "during this forbidden confrontation I felt fearful, discomfort, pressured and intimidated" because "to my understanding of the appeals process, at the time of this confrontation to the date of this declaration, any staff named in an appeal alleging misconduct is to never approach the appellant about the appeal." (*Id.* at 31.) Neither Plaintiff's description of that encounter (*id.*) or Officer Perez' separate description attached to Plaintiff's declaration as Exhibit C (*id.* at 44), contain any indication Officer Perez made threats or engaged in threatening behavior. Plaintiff relies merely on his own understanding that *any* such encounter is improper, however innocuous.

Even accepting Plaintiff's contention in his sworn declaration that he subjectively felt pressured or intimidated by his encounter with Officer Perez, in light of its innocuous nature and the fact that he filed nine inmate appeals thereafter, including an inmate appeal challenging the August 15, 2016 RVR on December 16, 2016 nearly four months after he was transferred from RJD, many identifying RJD officials by name, it does not constitute evidence of an objective fear of retaliation so severe as to have rendered the grievance process "effectively unavailable." *McBride*, 807 F.3d at 987-88 (holding that an interaction between plaintiff and prison guards following a severe beating where the guards told plaintiff he was "lucky" because his injuries "could have been much worse," though "hostile," did not make the appeal system unavailable because even if a subjective fear was legitimate it did not support an objectively reasonable fear of retaliation because the guards "were not overtly threatening."); *see also Sealey v. Busichio*, 696 Fed.Appx. 779, 781 (9th Cir. 2017) (finding plaintiff's continued filing of inmate appeals "weakens the objective basis for his contention that he was deterred from using the normal grievance process.")

In order to satisfy the objective prong, "there must be some basis in the record for the district court to conclude that a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance." *McBride*, 807 F.3d at 987. The encounter

with Officer Perez contained no such threats, and, in conjunction with the fact that Plaintiff continued filing inmate appeals identifying RJD Correctional Officers by name, it is insufficient to raise a genuine issue of material fact whether he was thwarted from filing an inmate appeal alleging Defendant Solis fabricated his allegations in retaliation for Plaintiff's use of the inmate appeal system. *Id.*; *see Anderson*, 477 U.S. at 256 (requiring plaintiff to come forward with "specific facts showing that there is a genuine issue for trial" in order to avoid summary judgment.); *Celotex Corp.*, 477 U.S. at 322 (holding that plaintiff must make "a showing sufficient to establish the existence of an element essential to that party's case.")

Plaintiff next contends there is a history of retaliation and harassment from his use of the inmate appeal system as shown by the fact that two staff complaints went missing after he handed them to RJD staff for mailing to the Warden. (ECF No. 51 at 31-33.) The Ninth Circuit has recognized that a prison inmate appeals system may be rendered effectively unavailable if inmate appeals are improperly screened out. *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010) ("If prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and administrative remedies are therefore plainly unavailable."); *see also Nunez*, 591 F.3d at 1225-26 (holding that warden's mistake handling inmate appeal which caused failure to submit appeal within time limits rendered the appeal system effectively unavailable).

Plaintiff states that on the same day as his encounter with Officer Perez on July 28, 2016, he submitted a staff complaint to Correctional Officer Briones in an institutional mail envelope addressed to the Warden "regarding, in part, the deliberate indifference to a serious medical need involving, in part, defendant Solis." (ECF No. 51 at 31-32.) On September 26, 2016, Plaintiff submitted 602 Inmate Appeal Log No. RJD-16-04433 complaining that he had sent two staff complaints to the Warden via confidential mail but he had "yet to receive any notices of appeals, appeal log numbers, interviews pertaining to the issues being appealed or any overall confirmation of acknowledgment that the appeals ever made it to their intended destinations." (*Id.* at 47-50.) He identified them as

describing "threats by staff, inhumane treatment/conditions while at RJD-CTC on 7-14-16, submitted 8-14-16; and the other appeal describes a refusal of access to health care which resulted in a suicide attempt by petitioner on 7-14-16, submitted on 7-31-14 [sic]." (*Id.*) Although 602 Inmate Appeal Log No. RJD-16-04433 does not identify Defendant Solis as the subject of the two missing staff complaints, and they involved incidents predating the August 15, 2016 incident with Defendant Solis on which the allegations in the SAC are based, Plaintiff now states in his declaration in opposition to summary judgment that:

> After being confronted by HCA Officer H. Perez about my use of the appeals system; the obstruction of the staff complaint naming Defendant R. Solis mailed to RJD Warden Paramo; being falsely alleged of "battery on a peace officer" by Defendant HCA Officer R. Solis, I was in fear that retaliation equal to or greater than what had already occurred would befall me at the hands of Facility C Correctional Officers, the custodians of my welfare, if I named any Facility C Correctional Officers in an appeal captioned as a staff complaint. Accordingly, I put prison officials on notice about the ongoing campaign of harassment and retaliation against me while having to omit names, titles, and details because of fear of retaliation from correctional officers involved.

(*Id.* at 33.)

Accordingly, Plaintiff alleges his fear of retaliation came to a head when two staff complaints went missing and he was falsely accused the next day of trying to stab Defendant Solis. He contends he was at that time intimidated from naming Defendant Solis in an inmate appeal alleging Defendant Solis falsely accused him in retaliation for using the inmate appeal system, and that the CDCR was on constructive notice he was being retaliated against. However, the record is unclear whether the two staff complaints he mailed to the Warden went missing. He submitted 602 Inmate Appeal Log No. RJD-16-04433 on September 26, 2016 complaining those staff complaints had gone missing. 602 Inmate Appeal Log No. RJD-16-04433 was screened out at the first level of review on the basis that both "missing" staff complaints had been received and assigned 602 Inmate Appeal Log No. RJD-16-03019 and 602 Inmate Appeal Log No. RJD-16-03530 and were both completed and mailed to Plaintiff on October 14, 2016. (*Id.* at 51.) Although Plaintiff disputed at that time that the two missing staff complaints identified in 602 Inmate Appeal

Log No. RJD-16-04433 are the two which went missing (*id.*), he identified them as involving a July 14, 2019 incident, and they were submitted prior to the August 15, 2016 incident with Defendant Solis. (*Id.* at 47-50.)

There is no evidence in the record to support Plaintiff's contention that his feeling of being harassed rose to the level of an objective fear of retaliation which prevented him from filing an inmate appeal against Defendant Solis alleging, as he does in the SAC, that Defendant's August 15, 2016 Crime/Incident Report was falsified in retaliation for Plaintiff's use of the inmate appeal system. He alleges in the SAC that he was declared a danger to himself and placed in a more restrictive setting as a result of the false and retaliatory allegation by Defendant Solis, but did not include that allegation in his inmate appeal challenging RVR finding him guilty of battery on Officer Rios a few hours later, did not include that allegation Health Care Appeal Log No. DSH-SVSP-HC-16000066 where he alleged he should never have been declared a danger to himself that day, and never submitted a separate inmate appeal regarding the incident with Defendant Solis. In fact, in his 602 Inmate Appeal Log No. RJD-17-00866 challenging RVR Log No. 761324 of battery on Officer Rios, in the section in which he is asked to explain why he is dissatisfied with the original second level review resolution that the inmate appeal had been dismissed at the second level of review as withdrawn by Plaintiff, he wrote:

> I was never provided a copy of the CDCR 837 to prepare an adequate defense, because there is no incident report for RVR #761324. CDCR 837 #RJD-CYD-16-08-0411 is assigned to the mandatory reportable incident requiring the use of force at 11:30, which alleges battery on a peace officer using an ink pen, which was collected, photographed and processed as evidence. The primary and responding staff of the 11:30 incident concluded their narratives with the deliberate and distinct words "without incident," bringing the 11:30 incident to an official end. 3 hours and 25 minutes later at 14:55, at a second location, the incident requiring the use of force, therefore mandates reporting through CDCR 837, occurred. Any incident requiring the use of force after 11:30 (#RJD-CYD-16-08-0411) requires its own separate CDCR 837. According to CDCR 837 #RJD-CYD-16-08-0411, Officer Rios was battered at 11:30, 2 and a half hours before arriving at work on his shift that began at 1400. In the matter of RVR #761324, due process was violated because I

wasn't provided a copy of the CDCR 837 because RVR #761324 does not have a CDCR 837. This RVR must be dismissed.

(*Id*. at 56.)

Thus, in his December 16, 2016, 602 Inmate Appeal Log No. RJD-17-00866 challenging the RVR finding him guilty of battery on Officer Rios as a result of the 2:55 p.m. incident on August 15, 2016, Plaintiff referenced the 11:30 a.m. incident with Defendant Solis, yet did not include allegations Defendant Solis had fabricated that charge in retaliation for Plaintiff's use of the inmate grievance process.

In sum, Plaintiff states that when he submitted the inmate appeal challenging the RVR on December 16, 2016 he was "still in fear of retaliation by Facility C Correctional Officers," and feared identifying any such officer by name. (*Id*. at 33-34.) Yet he was no longer housed at RJD, having been transferred to CMC on August 24, 2016, nearly four months before he filed the December 16, 2016 inmate appeal challenging the RVR. (ECF No. 52-1 at 2.) Moreover, he identified RJD officials by name on August 6, 2017 when challenging the second level response of that inmate appeal (ECF No. 51 at 54-55), in his inmate appeal challenging his placement in restrictive medical housing submitted on September 13, 2016 (*id*. at 93-95), in his challenge to the first level response to that appeal on October 30, 2016 (*id*. at 94, 96), in his challenge to the second level response to that inmate appeal on March 21, 2017 (*id*. at 94), in his September 29, 2017 inmate appeal claiming two staff complaints went missing (*id*. at 115), as well as in his August 14, 2016 inmate appeal and his November 13, 2016 response to its second level review. (ECF No. 37-2 at 87-88.)

In order to meet the objective prong of a claim that a prisoner was thwarted from utilizing the inmate appeals system, "there must be some basis in the record for the district court to conclude that a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance." *McBride*, 807 F.3d at 987. There is no genuine issue of

material fact in dispute regarding whether Plaintiff had such an objective fear of retaliation which thwarted him from filing an inmate appeal containing the allegations set forth in the SAC that Defendant Solis, in retaliation for Plaintiff's use of the inmate grievance system, falsely claimed Plaintiff tried to stab him with a ball point pen.

Viewing the undisputed evidence in the light most favorable to Plaintiff, Defendant Solis is entitled to summary judgment on the basis that Plaintiff failed to exhaust available administrative remedies. *Albino*, 747 F.3d at 1166 (holding that defendant is entitled to summary judgment if the undisputed evidence, viewed in the light most favorable to plaintiff, shows plaintiff failed to exhaust available administrative remedies), citing 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.")

## V. Conclusion and Order

Based on the foregoing, **IT IS ORDERED** that Defendant's Motion for summary judgment (ECF No. 37) is **GRANTED**.

The Clerk of Court shall enter judgment in favor of Defendant R. Solis and close the file.

**IT IS SO ORDERED.**

Dated: January 31, 2020

_____
Hon. Cathy Ann Bencivengo
United States District Judge